IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAYLOR CHEVROLET, INC. dba TAYLOR DEALERSHIPS, aka TAYLOR TEAM OF DEALERSHIPS., | : : : | Case No. 2:07 CV 0053 |
| Plaintiff, | : | Judge Frost |
| v. | : | Magistrate Judge King |
| MEDICAL MUTUAL SERVICES, LLC, | : | |
| Defendants. | : | |

**PLAINTIFF'S MOTION TO REMAND**

The Plaintiff, Taylor Chevrolet, Inc. respectfully moves the Court for an order remanding this case to the Court of Common Pleas of Fairfield County, Ohio, because the Court lacks jurisdiction over the subject matter of this action. A memorandum in support of the motion is attached.

Respectfully submitted,

　　　/s/ Tony C. Merry
Tony C. Merry　　(0042471)
Trial Attorney
Law Offices of Tony C. Merry, LLC
3300 Riverside Drive, Suite 125
Columbus, Ohio  43221
(614) 372-7114
(614) 372-7120 [fax]
tmerry@tmerrylaw.com

1

**MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

**INTRODUCTION**

This is a dispute between a retail enterprise that created and sponsored a self-funded medical plan for the benefit of its employees and the company the enterprise hired to provide certain services with respect to the plan. The enterprise, Taylor Chevrolet, Inc. ("Taylor") filed suit in the Fairfield County Court of Common Pleas against the service provider, Medical Mutual Services, LLC, ("MMS") alleging breach of contract, negligence and other claims arising under Ohio law because of MMS's breaches of duty under the contract and under state law.

Alleging "complete preemption" under ERISA, MMS removed the Complaint to this Court on January 25, 2007, and filed its Answer. Taylor now moves to remand, asserting that the allegations set forth in its complaint are not pre-empted at all, much less completely preempted, by ERISA. The Court, accordingly, lacks subject matter jurisdiction over this action.

**FACTS**

As of or about March, 2003, Taylor maintained a self-funded health plan (the "Plan"). The purpose of the Plan was to provide medical benefits to Taylor's employees and to dependents of those employees. (Complaint ¶10).[1] There is no dispute that the Plan itself was an employee welfare benefit plan established and maintained in accordance with the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). *See* 29 U.S.C. §1002(1) ("For purposes of this title, ... 'employee welfare benefit plan' mean[s] any plan, fund, or program which … is … established and maintained by an employer … for the purpose of providing for its participants or beneficiaries … medical, surgical or hospital care or benefits….").

---

[1] Removal jurisdiction is based on the allegations in the Complaint at the time of removal. *See, e.g., Rogers v. Wal-Mart Stores, Inc*., 230 F.3d 868, 871 (6th Cir. 2000).

2

On or about March 2003, Taylor entered into an administrative contract ("Administrative Contract") with MMS (Complaint, ¶4 and Ex. 1) and an excess loss reinsurance contract ("Reinsurance Contract") with American National Insurance Company. (Complaint, ¶10 and Ex. 3). Under the terms of these contracts, Taylor was obligated to establish the Plan, to prepare the governing plan document, and to prepare and distribute to its employees a summary plan description. (Complaint, Ex. 1, Section 3.1).

Also under the terms of these contracts, Taylor was financially liable to pay all the medical claims incurred by participants and beneficiaries.[2] (Complaint, Ex. 1, Section 3.5). Taylor entered into the Reinsurance Contract, however, to protect itself from the possibility of a catastrophic financial loss. Such a loss could occur if one participant incurred substantial costs for treatment of an illness or injury, or it could occur if several participants incurred costs for treatment of multiple illnesses or injuries. This design of a self-funded medical plan is common in the industry:

> There are two types of stop-loss insurance. Specific stop-loss insurance covers a plan against the risk that a particular participant's claims will exceed some specified level. For example, if the insurance kicks in when an individual's claims exceed $20,000 per year and a participant has bona fide claims of $30,000, the plan's stop-loss insurer covers $10,000 of the person's claims. Alternatively, aggregate stop-loss insurance covers a plan against the risk that the sum of all of its participants' claims will exceed some specified level. For example, if the insurance kicks in when aggregate claims exceed $ 2 million per year and claims under the plan total $ 2.5 million, the stop-loss insurer covers $500,000 of the claims.

*Bank of Louisiana v. Aetna US Healthcare, Inc.*, 468 F.3d 237, 239 n. 3 (5th Cir. 2006) (quotations and citations omitted).

---

[2] ERISA employs its own language to refer to the various actors involved in an employee benefit plan. For purposes of this case, a participant refers to an employee of Taylor who is eligible for benefits from the Plan, 29 U.S.C. §1002(7), and a beneficiary is a dependent of a Taylor employee. 29 U.S.C. §1002(8). The administrative contract between Taylor and MMS refers to these people as "Covered Persons." (Complaint, Ex. 1, §1.4).

3

In this case, Taylor's Reinsurance Contract required American National to reimburse Taylor for any claims the Taylor Plan paid on behalf of a single participant or beneficiary in excess of $50,000. (Complaint, Ex. 3, Sched. P. 2; Appx. p. 1).[3] Taylor did not contract with American National for aggregate coverage. (*Id.*).

Nothing in the Reinsurance Contract obligated American National to pay the medical claims of participants or beneficiaries. To the contrary, under the Administrative Contract, MMS was required, among a host of other duties, to "[p]rocess and pay … claims incurred by" participants and beneficiaries (Complaint, Ex. 1, p. 2) as they were submitted to the Plan. Upon approval of a claim, MMS would issue a check, either to the health provider or to the participant (Complaint, Ex. 1, p. 14), and then notify Taylor weekly as to the sums so expended. (Complaint, Ex. 1, p. 16). Taylor was required under the Administrative Contract to wire to MMS within one business day funds sufficient to cover the checks issued by MMS. (Complaint, Ex. 1, p. 16).

Even if the medical costs incurred by any single plan participant exceeded the $50,000 individual stop loss limit, Taylor was nevertheless required to wire funds to MMS sufficient to cover payment of the medical claims. (Complaint, Ex. 1, p. 16; Ex. 3, p. 8, ¶L). Once the $50,000 limit was reached on any individual, American National agreed to reimburse Taylor for costs Taylor paid in excess of $50,000, provided American National received timely notification of the obligation. (Complaint, Ex. 3, pp. 10, 18, Doc. 3, pp. 13, 21).

The claims asserted in Taylor's Complaint arise, in part, out of MMS's failure timely to place American National on notice that Taylor had incurred claims in excess of the individual aggregate for at least four individuals. (Complaint, ¶¶ 8, 10). Due to this failure, American

---

[3] The pages cited are found at pages 5 and 24 of Exhibit 3 attached to Plaintiff's Complaint. Document 3-4.

4

National refused to reimburse Taylor in excess of $40,000 which otherwise would have been payable under the terms of the reinsurance agreement. (Complaint, ¶10).

Taylor's Complaint also asserts claims arising out MMS's retention for a year of an overpayment made by Taylor. Taylor alleges that it advertently paid an MMS invoice twice (Complaint, ¶9 and Ex. 2) and that MMS wrongfully retained the overpayment. Taylor seeks, *inter alia*, compensation for the time value of the money. (Complaint ¶9).

## ARGUMENT

**I.     MMS bears the burden of establishing this Court's subject matter jurisdiction.**

An action can be removed from state court to federal court only if the plaintiff could have brought the action in federal court in the first instance. 28 U.S.C. §1441(b); *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 465 (6th Cir. 2002). The burden of establishing federal jurisdiction rests upon the removing party. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). In this case, therefore, MMS "bears the burden of proving that the plaintiff's claims are preempted by ERISA." *Taylor-Sammons v. Bath*, 398 F. Supp. 2d 868, 872 (S. D. Ohio 2005), citing *Pasack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 401 (3rd Cir. 2004). In the event the Court harbors any doubt about the propriety of the removal, the case should be remanded. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493(6th Cir. 1999).

In assessing the propriety of removal under § 1441(b), the "well-pleaded complaint rule" usually applies. Under this rule a federal cause of action arises only when the plaintiff's well-pleaded complaint raises issues of federal law. In other words, for removal to be appropriate, a federal question must appear on the face of the complaint. *Taylor-Sammons*, 398 F. Supp.2d at 872, citing *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470(1998); *Metropolitan Life Ins. Co. v.*

5

*Taylor*, 481 U.S. 58, 63 (1987); and *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9-10 (1983).

ERISA, however, provides a narrow exception to the well-pleaded complaint rule by permitting removal when the claims asserted in the plaintiff's complaint are "completely" preempted by ERISA. "Under this exception, a complaint may be removed to federal court and will be treated as alleging a federal cause of action for purposes of removal even though the complaint, on its fact, alleges only a state law cause of action." *Taylor-Sammons*, 398 F.Supp.2d at 872.

Courts have recognized two types of preemption under ERISA, conflict preemption and complete preemption. *See, e.g., Coldesina v. Estate of Simper*, 407 F.3d 1126, 1135-36 (10th Cir. 2005). Conflict preemption exists when a defendant raises ERISA preemption as a defense to a claim. Conflict preemption, however, does not by itself permit a claim to be removed to federal court.

> The mere fact that ERISA preemption under § 1144(a) may be raised as a defense, or is in actuality a defense, does not confer jurisdiction or authorize removal. *Taylor*, 481 U.S. at 64-67 (even if state law claim "relates to" an ERISA plan and is preempted by § 1144(a), complaint is not removable unless it is also encompassed within ERISA's civil enforcement scheme). Removal and preemption are two distinct concepts, and the mere fact that a claim is preempted by ERISA under § 1144 does not mean that it is automatically removable. *Wright v. General Motors Corp.*, 262 F.3d 610, 614 (6th Cir. 2001); *Warner v. Ford Motor Co.*, 46 F.3d 531, 534-5 (6th Cir. 1995). Section 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. *Wright*, 262 F.3d at 614; *Warner*, 46 F.3d at 534.

*Taylor-Sammons*, 398 F.Supp.2d at 872-73.

For a claim to be "completely preempted" and therefore removable, the removing party must satisfy two requirements: (1) that the plaintiff's claims "relate to" an ERISA plan within the meaning of ERISA's preemption provision; and (2) that the plaintiff's claims fall within

6

ERISA's enforcement provisions. *Taylor-Sammons* 398 F. Supp.2d at 872. "If the state law claim both 'relates to' an ERISA plan within the meaning of § 1144(a) and falls within the scope of ERISA's civil enforcement provisions found in § 1132(a), then the state law claim is completely preempted by ERISA and converted to a federal question for purposes of removal jurisdiction." *Id*.

**II.     Taylor's claims against MMS are not completely preempted by ERISA.**

    **A.     Taylor's claims are not preempted at all.**

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "The United States Supreme Court has dealt with [this] 'opaque language'" on a number of occasions. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005), citing *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 808-09 (1997) (noting the numerous attempts by the Court to define the boundaries of ERISA preemption). Early on, the Supreme Court described ERISA's preemption as "conspicuous for its breadth" and "deliberately expansive." *Penny*, 399 F.3d at 697. Beginning with *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995), however, "the Supreme Court has narrowed the preemptive scope of ERISA, moving away from the broadest meaning of the provision." *Id.*

Since *Travelers*, therefore, the Sixth Circuit has held that courts "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Penny*, 399 F.3d at 698 (citations and quotations omitted). Drawing from the case law, the Sixth Circuit has fashioned a three-part test for assessing whether a claim is preempted by ERISA:

7

> The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans. Thus, ERISA preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.

*Penny*, 399 F.3d at 698, citing and quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996) (internal citations and quotations omitted).

The benefit plans at issue in *Penny* were pension plans, including a Savings Plan and an Employee Stock Option Plan ("ESOP"). The employer, PONI, ran afoul of ERISA's "top heavy" rules, resulting in a fine and other costs that, in total exceeded $175,000. *Penny*, 399 F.3d at 695-96. PONI sought to recover this loss from National City Bank ("NCB"), which was the Trustee of the Savings Plan, and from Miami Valley Pension Corp. ("MVP"), which was a record-keeper for the ESOP. PONI asserted that both entities had contractual obligations that required them to guard against top heavy violations. It sued NCB under ERISA for breach of fiduciary duty, and also asserted state law claims. It sued MVP solely under state law.

The issue before the court was whether ERISA preempted PONI's state law claims. Applying the three-part[4] test drawn from *Travelers*, the Sixth Circuit found PONI's claims against NCB to be pre-empted. It held, however, that PONI's state law claims against MVP were not pre-empted.

The distinction between the two sets of claims, which the court found dispositive of the preemption issue, was the nature of the contract that PONI sought to enforce. With respect to the claims against NCB, "NCB serves as trustee to the Savings Plan and also provides record-keeping and commercial-banking services. NCB's record-keeping obligations arise out of the

8

Savings Plan itself, which contains provisions outlining the top-heavy rules and requiring coordination of top-heavy testing among multiple plans." *Penny*, 399 F. 3d at 699.  "[B]ecause the contract at issue in the breach-of-contract claim is the ERISA plan itself, the claim is clearly preempted." *Id*.

The court distinguished PONI's claim against NCB from other cases in which the courts held that state law claims were not preempted where the basis of the claim is "a service agreement or contract *separate and distinct* from the ERISA qualified plan." *Id*. (emphasis in original).  The court then noted that PONI's claims against MSV were based upon a contract separate and distinct from the plan documents at issue and held, therefore, that those claims were not preempted. *Id*. at 700.

The court further noted that PONI's state claims against MVP "[do] not fall within any of the three recognized categories which courts have generally found ERISA preemption. . . [s]pecifically, [that] PONI's suit against MVP will not result in mandating a specific employment benefit structure, providing an alternate enforcement mechanism of an ERISA plan, or regulating an ERISA plan itself." *Id*.

Finally, the court assessed whether the breach of contract claim against MVP "would implicate 'relations among the traditional ERISA plan entities.'" *Id.*  It concluded that it would not.  "PONI's breach-of-contract claim will not affect the structure, the administration, or the type of benefits provided by the plan.  Moreover, unlike the claim against NCB, PONI's claim against MVP is not based on any rights under the plan; there is no allegation that any of the plan's terms have been breached. Nor is there any effort to enforce or modify the terms of the plan." *Id*. at 701 (citations and quotations omitted).  The court noted that the claims PONI was

---

[4] The test actually appears to be a four-part test.  After discussing the application of the three-part test to the various claims, the court then considered a fourth issue: whether the state law claims asserted "would implicate relations

asserting against MVP "were no different than the consulting, custodial, actuarial, or legal services provided to ERISA plans in which the courts have found state-law causes of action to lie." *Id.* Finally, the court noted that holding the claims against MVP to be preempted would actually be contrary to ERISA's purposes and goals. *Id.* ("Indeed, permitting the suit to go forward would serve to strengthen the ERISA system. Allowing plans to contract with third-party service providers and resort to traditional contract remedies in case of breach helps to ensure the financial integrity of the plans Congress intended to protect.") (citations and quotations omitted).

Applying the test announced in *Penny* to the facts of this case, it is easy to determine that Taylor's claims against MMS are not preempted. There is nothing about Taylor's claims that "mandate employee benefit structures or their administration."

Similarly, there is nothing about Taylor's claims against MMS that purport to "provide alternate … mechanisms" for the enforcement of ERISA rights. Taylor is not a plan participant seeking to enforce a right to collect benefits. All benefits due under the plan have been paid to the appropriate participants or beneficiaries. Similarly, Taylor's complaint does not seek to enforce the terms of a benefit plan. To the contrary, like the claims against MVP in *Penny*, Taylor's claims arise out of a contract separate and apart from the plan document. Finally, Taylor does not claim that any action undertaken by MMS violated ERISA. Taylor's claims arise wholly under state law.

In the same fashion, there is nothing about Taylor's claims that "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." Neither Taylor's benefit plan nor the

---

among the traditional ERISA entities." *Penny*, 399 F.3d at 700.

provisions contained in it are at issue in this case. Taylor's claims arise separate and apart from anything in the plan.

Finally, the Sixth Circuit test asks whether Taylor's claims implicate relationship among traditional ERISA plan entities. They do not. While Taylor, as a plan sponsor, is a traditional ERISA entity, it is not clear whether MMS is or not. To the extent it exercises discretion over the payment of claims, MMS may well have acted, at times, in a fiduciary capacity. Neither party, however, has alleged that MMS is a fiduciary, and language in the Administrative Contract imposing final decision-making authority on Taylor suggests that MMS might not have been acting in a fiduciary capacity.

More importantly, fiduciary status is not an all or nothing proposition. "Whether an employer who is also an ERISA plan sponsor is a fiduciary of the plan generally requires a detailed analysis of the employer's actions and whether those actions were performed in the employer's fiduciary capacity. 'We must examine the conduct at issue to determine whether it constitutes "management" or "administration" of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties.'" *COB Clearinghouse Corp. v. Aetna United States Healthcare, Inc.*, 362 F.3d 877, 881-882 (6th Cir. 2004), quoting *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000).

While MMS may have acted in a fiduciary capacity with respect to processing and paying claims, it plainly was not acting in an ERISA fiduciary capacity when it engaged in the conduct that forms the basis of this lawsuit. And it is well-settled that suits by plan sponsors against service providers acting as service providers are not preempted by ERISA. *See, e.g., Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715 (9th Cir. 1997) (state law claims against bank for bad faith, negligence, fraud, and common law breach of fiduciary duty not

11

preempted by ERISA); *Custer v. Sweeney*, 89 F. 3d 1156 (4th Cir. 1996) (state law malpractice claim against attorney for plan was not preempted); *Airparts Co. v. Custom Benefit Servs.*, 28 F.3d 1062 (10th Cir. 1994) (malpractice claim against consultant not preempted); *Painters Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146 (professional negligence claim against fund auditor not preempted); *Redall Indus. v. Wiegand*, 876 F. Supp. 147 (E.D. Mich. 1995) (state law claims against providers of actuarial, accounting, and consulting services not preempted).

Under *Penny*, it is clear that the claims Taylor asserts against MMS, arising as they do from contractual obligations separate and distinct from the plan document, are not preempted by ERISA. Not surprisingly, a number of courts have reached the same conclusion on similar facts.

In *Geweke Ford v. St. Joseph's Omni Preferred Care*, 130 F.3d 1355 (9th Cir. 1997), for example, Geweke established a self-funded health plan subject to ERISA. Geweke contracted with St. Joseph's Omni Preferred Care, Inc. ("Omni") to provide administrative services for the plan and contracted for excess loss coverage from John Alden Life Insurance Company. *Geweke Ford*, 130 F.3d at 1357. Geweke paid medical claims on behalf of a plan participant in excess of the individual stop loss limit, but Alden refused to reimburse Geweke for the costs. Omni and Alden removed Geweke's state lawsuit to federal court, the district court dismissed Geweke's complaint for failure to state a claim, and Geweke appealed.[5]

The Ninth Circuit held that Geweke's state law claims were not preempted by ERISA.

> Geweke's state law claims fall outside the three areas of concern identified in *Travelers*: the state contract law upon which Geweke relies does not mandate employee benefit structures or their administration; does not bind employers or plan administrators to particular choices or preclude uniform administrative practice; and does not provide alternate enforcement mechanisms for employees to obtain ERISA plan benefits.

---

[5] The United States Department of Labor filed an *amicus* brief in support of Geweke. *Geweke Ford*, 130 F.3d at 1357, n.1.

12

*Geweke Ford*, 130 F.3d at 1360, citing *Coyne & Delany*, 98 F.3d at 1468.

The court further noted that "[c]ontract law is a general area of law, traditionally regulated by the states, which does not necessarily affect the relationships regulated under ERISA among employer, plan, participant, and fiduciary. Omni's alleged failure was to file the claim with Alden properly and in a timely manner, it was not a failure to administer the Plan." *Geweke Ford*, 130 F.3d at 1359 (emphasis added).

In *Analytical Surveys v. Intercare Health Plans*, 101 F. Supp. 2d 727, (N. D. Ind. 2000), the plaintiff, ASI, was an employer and plan sponsor for a self-funded health insurance plan for its employees. ASI sued Intercare Health Plans, Inc. (the third-party administrator) and John Alden Life Insurance Company (the reinsurer) in state court, contending that Intercare breached its contract with ASI and was negligent in processing employee health insurance claims. "ASI allege[d] that Intercare's handling of these claims resulted in inordinate delays in presenting the claims to ASI's stop-loss insurer, John Alden …, who in turn denied the claims as untimely." ASI also alleged that John Alden wrongfully refused to process and pay the claims pursuant to the terms of the stop loss policy. *Analytical Surveys*, 101 F. Supp.2d at 729.

Intercare and John Alden removed the case to federal court, asserting that ASI's claims were completely preempted by ERISA. The district court, however, concluded that it lacked subject matter jurisdiction and ordered the case remanded. *Id*. at 737.

In reaching its conclusion, the district court applying a three-part test drawn from *Rice v. Pancha*l, 65 F.3d 637 (7th Cir. 1995): "(1) whether the plaintiff [is] eligible to bring a claim under [section 502(a) of ERISA, 29 U.S.C. §1132(a)]; (2) whether the plaintiff's 'cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a); and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the

13

contract governed by federal law." *Analytical Surveys*, 101 F. Supp. at 731-32 (citations and quotations omitted).

The district court found the first part of the test satisfied – that ASI could bring a claim under section 502(a) of ERISA.[6] It concluded, however, that the second and third parts of the test were not satisfied. The second part was not satisfied because neither Intercare nor Alden were fiduciaries with respect to the misconduct that was alleged, 101 F. Supp. 2d at 733-34, and because the relief ASI sought (money damages) was not available under section 502(a)(3) of ERISA. *Analytical Surveys*, 101 F. Supp.2d at 734.

The court concluded that the third part of the test was not satisfied because "ASI's claims against Intercare and Alden do not require interpretation of the Plan, the contract governed by federal law." *Id.* at 734-35.

> Most importantly, ASI's relationships with the defendants are governed by two contracts that stand independently of the Plan. In regard to Intercare, ASI's and Intercare's respective obligations flow directly from the ASA, a contract that depends in no relevant respect on an interpretation of the Plan. For example, ASI seeks damages against Intercare based on a provision in the ASA that affords ASI a 20 percent discount if Intercare fails to process claims within the 10-day guarantee specified in the ASA. Consultation of the Plan, much less interpretation of it, is unnecessary to determine if Intercare met its processing obligations under the ASA.

*Id.*

In *Union Health Care v. John Alden Life Ins. Co.*, 908 F. Supp. 429 (D. Miss. 1995), the court held that claims brought by the plan sponsor of a self-funded plan against the third-party administrator and a reinsurer were not preempted by ERISA. With respect to the claims against "MAS", the third-party administrator, the court observed that the plan sponsor "does not allege

---

[6] The Seventh Circuit's position on complete preemption is that any claim that can be asserted under ERISA's civil enforcement provisions, which includes section 502(a)(2) and 502(a)(3) as well as section 502(a)(1)(B), satisfies the first part of the complete preemption test. The Sixth Circuit, however, has interpreted *Taylor* more narrowly,

14

in its complaint, nor contend in its briefs, that MAS made any payment under the plan in error or was not in strict compliance with the terms of Laird's plan. Rather, the only claim asserted against MAS is that it failed to timely notify John Alden of excess claims. In the court's opinion, this claim is not preempted.

> This claim does not relate to MAS's responsibilities to the plan or its participants, with respect to which duties it has a fiduciary relationship. Rather, the claims asserted in this case relate solely to MAS's duties vis-a-vis the reinsurance contract. Assuming MAS had a duty to give John Alden notice of excess claims, it was simply a duty owed to Laird for Laird's benefit, and not for the benefit of the plan and/or its participants.

*Union Health Care,* 908 F. Supp. at 435.

Since MMS's removal does not satisfy the first prong of the complete preemption analysis, Taylor's claims against MMS are not preempted by ERISA.

### B. Taylor's claims cannot arise under section 502(a)(1)(B).

The second test for complete preemption is whether the claims Taylor asserts could be asserted under section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B). MMS fails this aspect of the test, as well.

The controlling case on this issue is *Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir. 1995) (*en banc*). The Court sat *en banc* to resolve a conflict within the circuit and to overrule *Van Camp v. AT&T Info. Sys.*, 963 F.2d 119 (6th Cir. 1992), which held that any claim preempted by ERISA was subject to removal.

In holding that only a "completely preempted" claim could be removed, the court observed that the exception to the well-pleaded complaint rule that the Supreme Court recognized in *Taylor*, "is narrow." *Warner*, 46 F.3d at 534.

---

permitting removal only when the claim asserted could have been brought under section 502(a)(1)(B). *See*, *infra*, at Part B.

15

> [The Supreme Court] said that it is "reluctant to find that extraordinary pre-emptive power … that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." The Court ruled that the exception is narrowly limited in the ERISA context to state common law or statutory claims that fall within the ERISA civil enforcement provision of 29 U.S.C. § 1132(a)(1)(B) because "the legislative history consistently sets out this clear intention to make [§ 1132(a)(1)(B)] suits brought by participants or beneficiaries federal questions for the purpose of federal court jurisdiction...." Therefore, in order to come within the exception a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," as provided in § 1132(a)(1)(B).

*Warner*, 46 F.3d at 534, quoting *Taylor*, 481 U.S. at 65, 66.

Thus, while some other circuits would find complete preemption if a claim could be said to arise under any subsection of section 502(a) of ERISA, 29 U.S.C. §1132(a), *see, e.g., Intercare*, 101 F. Supp. 2d at 733, the Sixth Circuit finds complete preemption, and therefore allows removal, only where the claim could arise under section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). *See also Wright v. GMC*, 262 F.3d 610, 615 (6th Cir. 2001) ("Wright's claim is not completely preempted by ERISA because it is not a § 1132(a)(1)(B) claim for benefits or rights under an ERISA plan.").

Section 502(a)(1)(B) permits only participants or beneficiaries to bring a claim, and then only a claim for benefits or other relief "under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). Taylor is neither a participant nor a beneficiary, and it does not seek to enforce anyone's rights under the terms of the plan. Taylor's claims against MMS are not completely preempted.

## CONCLUSION

None of the claims asserted in Taylor's complaint are completely preempted by ERISA. Because there is no complete preemption, there are no federal claims presented in this case, and

16

the Court lacks subject matter jurisdiction. As such, the Court should enter an order remanding this case to the Court of Common Pleas of Fairfield County, Ohio.

Respectfully submitted,

     /s/ Tony C. Merry
Tony C. Merry    (0042471)
Trial Attorney
Law Offices of Tony C. Merry, LLC
3300 Riverside Drive, Suite 125
Columbus, Ohio 43221
(614) 372-7114
(614) 372-7120 [fax]
tmerry@tmerrylaw.com

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served upon David J. Wigham, Critchfield, Critchfield & Johnson, Ltd., 225 N. Market Street, Wooster, Ohio 44691, attorney for Defendant Medical Mutual Services, LLC, via the Court's electronic filing system on this 19th day of February, 2007.

    /s/ Tony C. Merry
Tony C. Merry