UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TAYLOR CHEVROLET, INC.**
**dba TAYLOR DEALERSHIPS, aka**
**TAYLOR TEAM OF DEALERSHIPS,**

       **Plaintiff,**                       Case No. 2:07-cv-53
                                                    JUDGE GREGORY L. FROST
   **v.**                                      Magistrate Judge King

**MEDICAL MUTUAL SERVICES, LLC.,**

       **Defendants.**

## OPINION & ORDER

This matter comes before the Court for consideration of a Motion to Remand (Doc. # 9) filed by Plaintiff Taylor Chevrolet, Inc. ("Plaintiff"), a memorandum in opposition (Doc. # 12) filed by Defendant Medical Mutual Services, LLC ("Defendant"), and a reply. (Doc. # 13.) For the reasons that follow, this Court finds that Plaintiff would not have standing under the Employee Retirement Income Security Act, as amended ("ERISA") and thereby grants Plaintiff's motion.[1] (Doc. # 9.)

### A. Background

Plaintiff is an Ohio corporation with its principal place of business in Lancaster, Ohio. Defendant is an limited liability company organized under Ohio law and maintains its principal place of business in Cleveland, Ohio. As of or about March 1, 2003, Plaintiff created a self-

---

[1] This Court **DENIES AS MOOT** Defendant's motion to strike Plaintiff's response to Defendant's sur-reply. (Doc. # 20.) This Court also finds that Defendant's sur-reply (Doc. # 15) and Plaintiff's response to Defendant's sur-reply (Doc. # 19) are **MOOT** as they both target substantive issues not related to the threshold standing inquiry that is the basis of this Court's decision.

funded health benefit plan (the "Plan") for the purpose of providing medical benefits to its eligible employees and their dependents. The parties do not dispute that the Plan itself was an employee welfare benefit plan established and maintained in accordance with ERISA.

In March 2003, the parties entered into an administrative contract ("Contract"). Under the terms of the Contract, Plaintiff was required to establish the Plan, prepare a governing Plan document, and prepare and distribute a summary Plan description to its employees. Pursuant to the Contract, Plaintiff was also financially liable to pay all the medical claims incurred by the Plan's participants and beneficiaries.[2] Defendant was to act as an administrator to the Plan. According to the terms of the Contract and the Plan, Defendant was to provide coordination of benefits, workers' compensation services and subrogation services, and maintain and retain custody of the records of claims submitted under the Plan. Defendant was also to process and pay medical claims incurred by employees and their dependents.

To the extent that Defendant exercised discretion in administering claims, Defendant acted as an ERISA fiduciary. Upon approval of a claim, Defendant would issue a check to either the health provider or the participant. Defendant was to then notify Plaintiff weekly as to the amounts that it expended. The Contract then required Plaintiff to reimburse Defendant for the entire amount within one business day of invoice.

---

[2] ERISA defines a "participant" as "any employee. . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8). The Contract between the parties refers to a participant and beneficiary collectively as "Covered Persons."

Plaintiff also entered into an excess loss reinsurance contract with American National Insurance Company ("American National") to protect itself from catastrophic financial loss. Notwithstanding Plaintiff's reinsurance contract with American National, Plaintiff was still required to reimburse Defendant for the entire amount of approved medical claims. The reinsurance contract required American National to reimburse Plaintiff for any claims Plaintiff paid on behalf of a single covered person in excess of $50,000. To ensure that Plaintiff was reimbursed, Plaintiff alleges that Defendant was required to timely notify American National of the excess amount.[3] Finally, effective March 1, 2005, Defendant began to provide a fully insured health benefit plan to Plaintiffs and its eligible employees and their dependants in place of the former self-insurance plan.

In the present case, all of Plaintiff's claims arise out of two factual allegations. First, Plaintiff alleges that Defendant failed to inform American National that Plaintiff had incurred costs of claims in excess of the individual aggregate for at least four covered persons. Due to the alleged failure, American National later refused to reimburse Plaintiff resulting in a loss of $40,347.70 that would have been covered under the reinsurance contract.

Second, Plaintiff alleges that Defendant wrongly retained a double payment that Plaintiff made to Defendant on March 4, 2005 in the amount of $50,031.13.[4] Defendant applied the initial payment to the amount due. Defendant, however, retained and deposited the "extra"

---

[3] Though immaterial on a Motion to Remand, this Court notes that Defendant argues that the 2003 Contract did not obligate it to inform American National of the excess loss that would fall under American National's coverage. Furthermore, Defendant claims that Plaintiff did not inform Defendant of its duty to do so until after the first Contract was up for renewal in March, 2004.

[4] The parties do not dispute that Plaintiff paid the same invoice twice.

payment into an account for payment of claims that were due under the former self-insured plan until the funds were exhausted. Plaintiff alleges that Defendant owes it an amount of at least $2,587.91 in interest on the "extra" payment that Defendant retained for almost one year.

Consequently, Plaintiff brought suit in the Court of Common Pleas in Fairfield County, Ohio, alleging breach of contract, breach of fiduciary duties, negligence, unjust enrichment, fraud, and bad faith. Plaintiff prays for the following relief: (1) compensatory damages on its negligence claim; (2) compensatory damages on all other claims plus pre-judgment and post-judgement interest; (3) statutory interest on Plaintiff's overpayment to Defendant or a sum of $2,587.91, whichever is greater; and (4) punitive damages.

On January 25, 2007, Defendant removed this lawsuit to this Court on the basis that at least one of the counts in the Complaint was completely pre-empted by ERISA. Plaintiff now moves to remand. Plaintiff asserts that this Court lacks subject matter jurisdiction on ground that ERISA does not completely pre-empt the allegations set forth in the Complaint.

**B. Discussion**

**1. Removal Jurisdiction**

A defendant can remove an action from state court to federal court only if the plaintiff could have brought the action in federal court in the first instance. 28 U.S.C. § 1441(b); *see Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465 (6th Cir. 2002). The burden of establishing federal jurisdiction rests upon the defendant as the removing party. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 2002).

Here, it is undisputed that diversity jurisdiction under 28 U.S.C. § 1332 does not exist. Thus, it

is Defendant's burden to establish that Plaintiff's complaint "arises under" federal law. 28 U.S.C. § 1332; *Alexander*, 13 F.3d at 949.

Whether a complaint arises under federal law is normally governed by the "well-pleaded complaint rule." *Taylor-Sammons v. Bath*, 398 F. Supp. 2d. 868, 872 (S.D. Ohio 2005). Under this rule, a cause of action "arises under" federal law, only when a plaintiff raises issues of federal law on the face of the well-pleaded complaint. *Taylor-Sammons*, 398 F. Supp. 2d. at 872 (citing *Metro. Life Ins. Co. v. Taylor* 481 U.S. 58, 63 (1987)). Thus, when a federal question does appear on the face of the complaint, removal is appropriate. *Id.* A defendant, therefore, cannot remove an action to federal court solely on the basis of a federal defense, even if the federal defense is anticipated in a plaintiff's complaint or is the central issue in the case. *Id.* (citing *Franchise Tax Board v. Construction Labors Vacation Trust*, 463 U.S. 1, 14 (1983)).

**2. Preemption**

In the case of conflict preemption (also known as ordinary preemption), courts adhere to the well-pleaded complaint rule. Under conflict preemption, "state laws that conflict with federal laws are preempted, and preemption is asserted as 'a federal defense to plaintiff's suit.' " *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186-87 (4th Cir. 2002) (quoting *Metro. Life Ins. Co.,* 481 U.S. at 63); *see also Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370-71 (4th Cir. 2003). Because conflict preemption is a defense to a cause of action, the Supreme Court has recognized that it normally does not appear on the face of the Plaintiff's well-pleaded complaint. *Darcangelo*, 292 F.3d at 186-87 (quoting *Metro. Life Ins. Co.,* 481 U.S. at 63); *see also Sonoco Products Co.*, 338 F.3d at 370-71. Therefore, conflict preemption alone

5

does not warrant the removal to federal court. *Darcangelo*, 292 F.3d at 186-87 (quoting *Metro. Life Ins. Co.,* 481 U.S. at 63); *see also Sonoco Products Co.*, 338 F.3d at 370-71.

Conversely, the jurisdictional doctrine of complete preemption is a narrow exception to the well-pleaded complaint rule. *Taylor-Sammons*, 398 F. Supp. 2d. at 872. Complete preemption is an exercise of extraordinary preemptive power and applies only in those cases where Congress' intent in acting a federal statutory scheme was to completely preempt state law and create federal jurisdiction under 28 U.S.C. § 1331. *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004); *Taylor-Sammons*, 398 F. Supp. 2d. at 872. Under this exception, a court will treat a complaint that on its face only alleges a state law cause of action as alleging a federal cause of action for purposes of removal. *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004) (stating that where Congress has indicated its intent to completely occupy a field, any ostensible state law claim is in fact a federal claim for purposes of federal jurisdiction); *see also Taylor-Sammons*, 398 F. Supp. 2d. at 872.

### 3. ERISA Preemption

ERISA is example of a federal statute where both conflict and complete preemption may arise. Section 514 of ERISA defines the scope of ERISA's preemption of conflicting state laws: state laws are superseded insofar as they "relate to" ERISA's exclusive regulation of employee welfare benefit plans. 29 U.S.C. § 1144(a). Removal and preemption, however, are two distinct concepts. The mere fact that § 1144(a) of ERISA preempts state law claims, does not mean that it is automatically removable. Rather, preemption under § 1144(a) may be raised only as a defense to the state law claim in state court. *Sonoco Products Co.*, 338 F.3d at 371; *see also*

*Taylor-Sammons*, 398 F. Supp. 2d. at 872.  It does not provide a basis for removal to federal court.  *Sonoco Products Co.*, 338 F.3d at 371; *see also Taylor-Sammons*, 398 F. Supp. 2d. at 873 (stating that "[s]ection 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule.")(citations omitted).

     Rather, a state law claim is removable only if it is completely preempted.  *Sonoco Products Co.*, 338 F.3d at 371; *see also Taylor-Sammons*, 398 F. Supp. 2d. at 873.  In order to be completely preempted, the state law claim must be capable of being characterized as an ERISA enforcement action under ERISA's civil enforcement provision.  § 28 U.S.C. 1132(a); *Sonoco Products Co.*, 338 F.3d at 371 (stating "the civil enforcement provision 'completely preempts state law claims that come within its scope and converts these state claims into federal claims. . .'" (quoting *Darcangelo*., 292 F.3d at 187); *see also Taylor-Sammons*, 398 F. Supp. 2d. at 873. Thus, those state law claims that fall outside the scope of ERISA's civil enforcement provision are not subject to removal even though the state law at issue may "relate to" an ERISA plan as to be preempted under § 1144(a).  *See, e.g., Taylor-Sammons*, 398 F. Supp. 2d. at 873.

     For a claim to be completely preempted and therefore removable to federal court, the removing party must prove that : "(1) the plaintiff . . . [has] standing under § 502(a) to pursue its claim; (2) its claim must 'fall [] within the scope of an ERISA provision that [it] can enforce via § 502(a)'; and (3) the claim must not be capable of resolution 'without an interpretation of the contract governed by federal law,' i.e., an ERISA-governed employee benefit plan."  *Sonoco*, 338 F.3d at 372 (quoting *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1487 (7th Cir. 1996)); *see Taylor-Sammons*, 398 F. Supp. 2d. at 875.

With respect to the second requirement, the Supreme Court in *Aetna Health v. Davila*, 542 U.S. 200, 209 (2004) reiterated its prior holding in *Metro. Life Ins. Co. v. Taylor* that §1132 (a)(1)(b) serves to completely preempt state law claims brought by participants or beneficiaries. *Davila*, 542 U.S. at 209 (referencing *Metro. Life Ins. Co.*, 481 U.S. at 65-66). The Supreme Court in *Davila*, however, did not resolve whether § 1132(a)(2) also has a completely preemptive effect so as to permit removal. *Davila*, 542 U.S. at 206.

Here, the parties are in dispute over prong two: the scope of § 1132(a). Specifically, the parties disagree as to which sections of § 1132(a) completely preempt a state cause of action. Defendant asserts that any claim that could have been brought under section § 1132(a)– and not just §1132(a)(1)(b)-- are completely preempted.[5] Defendant then posits that Plaintiff's state law claims are removable because they could have brought under § 1132(a). Conversely, Plaintiff argues that the doctrine of complete preemption applies more narrowly. Plaintiff states that only claims for benefits that could have been brought under § 1132(a)(1)(b) are removable. Thus, Plaintiff contends that its Complaint should be remanded because it has not asserted a claim for benefits under § 1132 (a)(1)(b).

As explained below, this Court concludes that Plaintiff lacks standing to pursue its claim under § 1132(a). Where a plaintiff lacks standing under ERISA, a plaintiff's state law claims

---

[5] Section 1132(a)(1)(b), states that a civil action may be brought by a participant or beneficiary– "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Section 1132(a) also encompasses but not limited to § 1132(a)(2), which states that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title," as well § 1132(a)(3) which states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan.

may not be recharacterized as an ERISA enforcement action. *Sonoco Products Co.*, 338 F.3d at 372; *see also Taylor-Sammons*, 398 F. Supp. 2d. at 877. Thus, it is unnecessary for this Court to assess the other prongs of the preemption analysis. Accordingly, this Court need not resolve what sections of ERISA's civil enforcement provision serve to completely preempt a state law cause of action.

### 4. Standing under ERISA

Section 1132(a) specifies the types of claims that may be properly be pursued under ERISA as well as the parties entitled to assert those claims. *Sonoco Products Co.*, 338 F.3d at 372. Accordingly, courts narrowly construe the provisions of § 1132(a) to permit only those parties enumerated to bring suit. *COB Clearinghouse Corp. v. Aetna U.S. Healthcare Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) (citing *Simon v. Value Behavioral Health*, 208 F.3d 1073, 1081 (9th Cir. 2000)). Specifically, § 1132(a)(3), which provides for equitable relief, allows a "participant, beneficiary, and fiduciary" to bring claims, while § 1132(a)(1), which provides for monetary damages, only allows a "participant and beneficiary" to file suit.

Under these definitions, an employer can be neither a participant nor a beneficiary. *Sonoco Products Co.*, 338 F.3d at 372 n.8. Here, the parties do not dispute that Plaintiff, as an employer, is neither a participant nor beneficiary under the plan. Plaintiff's Complaint only seeks monetary relief. In light of Sixth Circuit precedent, Plaintiff is required to be a participant or a beneficiary to bring an enforcement action under ERISA. *COB Clearinghouse Corp.*, 362 F.3d at 881. Thus, this Court concludes that to the extent Plaintiff seeks monetary relief, Plaintiff would not have standing under ERISA to assert its claims. Therefore, this Court cannot

characterize Plaintiff's claims as an ERISA enforcement action.  If this Court, however, broadly construes Plaintiff's Complaint to also seek equitable relief, then this Court must consider whether Plaintiff would have standing under § 1132(a)(3).

Plaintiff has standing under § 1132(a)(3) only if it (1) it is a "fiduciary" under ERISA; and (2) it is asserting its breach of contract claim in a fiduciary capacity.[6]  *Sonoco Products Co.*, 338 F.3d at 372 n.8.  This Court finds for the reasons below that Plaintiff would not have standing under § 1132(a)(3).

An employer that establishes or maintains an employee benefit plan, such as Plaintiff, is a plan sponsor under ERISA.  29 U.S.C. § 1002(16)(B).  A plan sponsor is not a fiduciary for all purposes.  *Hunter v. Caliber Sys., Inc.*, 200 F.3d 702, 718 (6th Cir. 2000)(recognizing that "employers who are plan sponsors wear two hats: one as a fiduciary in administrating or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, amending, and terminating the trust"); *see also Sonoco Products Co.*, 338 F.3d at 373; (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996)).  Rather, only when plan sponsor is pursuing claims that are related to carrying out its fiduciary responsibilities does the plan sponsor have standing under § 1132(a)(3) as a ERISA fiduciary.  *Sonoco Products Co.*, 338 F.3d at 373 (quoting *Coyne & Delany Co.*, 98 F.3d at 1465).  A plan sponsor acts as a fiduciary only to the extent that "(I) he exercises any discretionary authority or discretionary control respecting management of such plan. . . or (iii) he

---

[6]  "[A] person is a fiduciary with respect to a plan to the extent [that] (I) he exercises any discretionary authority or discretionary control respecting management of such plan. . . [or that] he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

has any discretionary authority or discretionary responsibility in the administration of such plan." § 29 U.S.C. 1002(21)(A).

Conversely, a plan sponsor does not act as a fiduciary simply "by performing settlor-type functions such as establishing a plan and designing its benefits." *Sonoco Products Co.*, 338 F.3d at 373; *see Coyne & Delany Co.*, 98 F.3d at 1465. Moreover, where "a plan sponsor's claims in a lawsuit relate solely to its own injuries, and not to its fiduciary responsibilities to the plan or to the plan's participants or beneficiaries, it is not acting as a ERISA fiduciary under 29 U.S.C. § 1002(21)(A)." *Sonoco Products Co.*, 338 F.3d at 373.

The Sixth Circuit has concluded that an employer's claims against a third party administrator and a stop-loss insurer for its employees' benefit plan are not completely preempted. *Michigan Affiliated Healthcare Sys v. CC Sys Corp. of Michigan*, 139 F.3d 546, 550 (6th Cir. 1998). In *Michigan Affliated Healthcare Sys*, the employer covered a participant's procedure under their partially self-funded medical plan that exceeded the employer's insurance coverage over the individual. *Id.* at 548. When the employer submitted the claim to its stop-loss insurance carrier, the stop-loss insurance carrier denied coverage for the excess amount based on the terms of their policy. *Id.* The employer then brought suit in state court against the claims administrator for the plan and the stop-loss insurance carrier to recover reimbursement of the medical expenses that the employer paid. *Id.* The Sixth Circuit held that the employer's claims were not completely preempted because the employer was proceeding on a breach of contract action and not on behalf of a beneficiary. *Id.* at 550; *see also Toumajian v. Frailey*, 135 F.3d 648, 656 (9th Cir. 1988) (concluding that employer was not seeking relief on behalf of ERISA

plan when employer was attempting to recover for the harm that employer suffered from its accountant's malfeasance).

Here, Plaintiff is seeking to recover from Defendant monetary losses allegedly caused by Defendant's acts or omissions. Namely, Plaintiff seeks from Defendant its loss of interest on its overpayment as well as a reimbursement of medical expenses that its stop-loss insurer refused to pay. Plaintiff, therefore, is attempting to recover for an independent harm that it suffered. Moreover, it is undisputed that the relevant beneficiaries of the plan were fully covered and have suffered no injury because of Plaintiff's own losses. Thus, Plaintiff is not asserting its claims in its fiduciary capacity on behalf of beneficiaries or participants. Rather, Plaintiff is seeking to enforce its own rights under a separate, distinct contract that it had with Defendant. As a result, Plaintiff is not acting as an ERISA fiduciary with respect to its claims against Defendant. Plaintiff, therefore, would not have standing under § 1132(a)(3).

### D. Conclusion

Because Plaintiff would have lacked standing to bring an ERISA enforcement action, complete preemption does not apply. Consequently, this Court does not have subject matter jurisdiction over the Plaintiff's state law claims. Thus, this Court **GRANTS** Plaintiff's motion to remand. (Doc. # 9.) This case is hereby remanded to the Court of Common Pleas of Fairfield County Ohio. The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

        /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

.